**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | **Criminal Action** |
| | ) | |
| **v.** | ) | **Case No.17-10088-01-EFM** |
| | ) | |
| **SHEA THOMPSON,** | ) | |
| **Defendant.** | ) | |
| | ) | |

**UNITED STATES' RESPONSE TO  DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE RESULTING FROM THE "NIT" WARRANT (DOC. 20)**

Regardless of any challenge the defendant makes to the NIT[1] warrant, suppression is not warranted under the good faith exception to the exclusionary rule.  *United States v. Workman*, 863 F.3d 1313 (10th Cir. 2017), *pet. for cert.* denied 138 S.Ct. 1546 (Apr 16, 2018).  Further, as set forth below, the defendant's remaining arguments also fail.  Therefore, the Court should overrule and deny this motion.

**I.      Circuit Court of Appeals Decisions involving this NIT warrant**

To date, each Circuit Court to consider the NIT warrant found suppression not warranted. *See Workman*, 863 F.3d 1313 (finding good faith after assuming, but not deciding the warrant was invalid); *United States v. Werdene*, 883 F.3d 204 (3rd Cir. 2018) (finding good faith even though warrant was void at its inception because magistrate judge was not authorized to issue warrant for search of computers outside district); *United States v. McLamb*, 880 F. 3d 685 (4th Cir. 2018) (even if authorization or execution of NIT warrant had amounted to a constitutional violation, suppression not warranted under good faith exception to the exclusionary rule); *United States v.*

---

[1] "NIT" stands for Network Investigative Technique.

*Levin*, 874 F.3d 316 (1st Cir. 2017) (same); *United States v. Horton*, 863 F.3d 1041 (8th Cir. 2017) (although magistrate lacked jurisdiction to issue NIT warrant resulting in a constitutional violation, suppression not warranted under good faith exception); *Cf, United States v. Tagg*, 886 F.3d 579 (6th Cir. 2018), (without addressing the validity of the NIT warrant, the Court reversed the lower court's suppression order on the basis that the search warrant for the defendant's residence was supported by probable cause and there was a sufficient nexus to the defendant's residence).

## II.      Statement of Facts

A general recitation of the factual background leading to the defendant's indictment has been provided in the United States' Response (Doc. 27). For purposes of this response, the United States focusses on the background relative to the NIT warrant.

### Tor and Playpen

The Tor network is comprised of a network of computers run by volunteers around the world.  When a user accesses a website on the Tor network, that website only logs the IP address of the last computer through which the user's communication was routed.  There is no way to trace a user's communications from this final relay, or "exit node" back to the user's computer.

Within the Tor network, certain websites such as Playpen operate "hidden services."  Like open websites, hidden services are hosted on computer servers that communicate through IP addresses.  Normally when a user accesses a website, the website is able to determine the user's IP address.  The IP address for a computer hosting a hidden service is replaced with a Tor-based web address – a series of 16 algorithm-generated characters followed by the suffix ".onion."

Finding a Tor website's IP address using public lookups is impossible.  Because Tor websites are not indexed like open websites, those can not be located using a "Google"-type search. In order to find Playpen, a user had to affirmatively take the following steps:  1) download and

install the Tor software; 2) acquire the unique ".onion" address for Playpen from another user, online postings, or a link within the hidden service; 3) find Playpen on the Tor network; and 4) once there, gain access to the Playpen website content by registering a username and password. Because of how the Tor network routed communications, traditional techniques used to identify IP addresses were not viable.

Playpen was always hosted as a TOR hidden service. For a limited time, individuals could access Playpen on the open Internet, but only if the individual knew the exact IP address.

Users who accessed the Playpen website initially reached the main page. According to the affidavit in support of the NIT warrant, next to the website's title on the main page were images of two partially clothed prepubescent girls posing in a sexually suggestive manner. This image was confirmed on the main page as of February 18, 2015. However, at the time the warrant was signed on February 20, 2015, the main page depicted an image of a single young female with her legs crossed, reclined on a chair, wearing stockings and a short dress that exposed a portion of her upper thigh.

Users also observed under the Playpen logo on the main page the message, "Warning! Only registered members are allowed to access this section. Please login below or register an account with Playpen." A user was required to register by creating a username and password before having access to any other section of the website. If a user clicked "register an account," the website displayed a message that instructed the user to "enter an email address, and check that what you enter looks approximately valid . . . the forum operators do NOT want you to enter a real address, just something that matches the xxx@yyy.zzz pattern."

After registering and logging into the website, users had access Playpen's forums and sub-forums where they could upload material and view material uploaded by others. The titles for

these forums and sub-forums included, "Jailbait Videos," "Jailbait Photos," "Pre-teen Videos," "Pre-teen Photos," "Family Playpen – Incest," "Toddlers," and "Bondage."  The FBI's review of the contents of these forums and sub-forums revealed that the majority of the content depicted sexually explicit images of minors.

Law enforcement became aware of Playpen in late 2014.  The FBI determined the physical location for Playpen's server, and seized the server in January 2015.  Law enforcement operated the Playpen site from a location in the Eastern District of Virginia from February 20, 2015, until the website was shut down on March 4, 2015.

### The NIT

To address the anonymity of the Tor Network, on February 20, 2015, law enforcement obtained court approval from a magistrate judge in the United States District Court for the Eastern District of Virginia to monitor user communications and to deploy the NIT to identify the actual IP addresses and other identifying information of computers used to access Playpen.  To utilize the NIT, law enforcement left the Playpen website running for approximately 12 days.

The affidavit in support of the warrant authorizing the NIT's use described how it would operate.  Pursuant to that authorization, between February 20, 2015, and approximately March 4, 2015, each time a user or administrator logged into Playpen by entering a username and password, the server sent the website and the NIT instructions to the user's computer.  When the user's computer ("activating computer") successfully downloaded those instructions, the Playpen user's computer responded by sending the following seven discrete pieces of information  back to the government:

1. The activating computer's IP address, and the date and time that the NIT determined that IP;

2. A unique identifier generated by the NIT to distinguish the data from that of other

activating computers, that will be sent with and collected by the NIT;

3.     The type of operating system running on the activating computer;

4.     Information about whether the NIT had already been delivered to the activating computer;

5.     The activating computer's host name;

6.     The activating computer's active operating system username; and,

7.     The activating computer's Media Access Control ("MAC") address.

The affidavit in support of the NIT warrant advised the magistrate judge that "the NIT may cause an activating computer – wherever located – to send to a computer controlled by or known to the government, network level messages containing information that may assist in identifying the computer, its location, other information about the computer and the user of the computer." The face of the NIT warrant indicated the property was located in the Eastern District of Virginia, and referenced Attachment A.  Attachment A explained that the NIT would be deployed from a computer server located at a government facility in the Eastern District of Virginia, and would obtain information from the activating computers.  The NIT warrant led to the identification of hundreds of users who accessed child pornography on Playpen.

**"thedirtbed"**

According to logs from the website, "thedirtbed" originally registered on September 5, 2014. According to the Statistics section for the user-profile, "thedirtbed" had been actively logged into the website for a total of 6 hours and 43 minutes between the dates of September 5, 2014 to March 4, 2015. On March 3, 2015, "thedirtbed" logged in to the child pornography website and accessed the "Girls HC thread Quickie. But goodie" forum and, more specifically, post 19246, which contained a link to a multiple photo image (commonly referred to as a contact sheet) depicting a prepubescent female performing oral sex on a male's penis. Again, on March 4, 2015,

"thedirtbed" logged in to the child pornography website and accessed the "Pre-teen Photos/Girls HC" forum and, more specifically, a post entitled "Ali-Lucy." On this date, "thedirtbed" also accessed the "Preteen Girl thread Helo/Helen" forum and, more specifically, post 16869, which contained a link to 46 individual photos depicting a nude prepubescent female engaged in various sexually explicit activities, including performing oral sex on an adult male's penis. Via the NIT, investigators learned the user "thedirtbed" connected to the website from IP address 68.103.99.59 with a computer using a Windows operating system, hostname "WIN-HKHNTOPT0TH" and log-on name "Shea." The IP address ultimately returned to Cox Communications subscriber Kim Thompson at a residence in McPherson, Kansas. Kim Thompson is the mother of Shea Thompson, who resides at the same address.

Based upon the information obtained using the NIT warrant, law enforcement obtained a search warrant for the defendant's residence in McPherson, Kansas.  Law enforcement executed the warrant on March 9, 2016.  Investigators seized electronic devices and conducted an interview of the defendant. In his voluntary and recorded interview, the defendant admitted to accessing TOR, for child pornography, using his "thedirtbed" profile.

## III.  Discussion

The defendant argues multiple reasons why the Court should suppress all physical evidence obtained directly or indirectly from the NIT warrant, including his statements to law enforcement. However, the United States contends suppression is inappropriate because:

A.   Suppression of evidence is not warranted, even assuming for the sake of argument that the magistrate judge lacked jurisdiction resulting in a constitutional violation, because law enforcement relied in good faith upon the warrant;

B.   The NIT warrant was supported by probable cause, particularly described the place to be searched and the items to be seized, provided sufficient nexus to the place to be searched, and was issued by a neutral and detached magistrate;

C.    There was no material omission in the affidavit, and the execution of the warrant did not violate the Reasonableness Clause;

D.    The issuance of the NIT warrant complied with Rule 41, which is to be interpreted flexibly, at a minimum, as a tracking device pursuant to Rule 41(b)(4), and was therefore not "void;"

E.    Assuming that the NIT warrant did not strictly comply with Rule 41, any such violation was merely technical, and not a constitutional violation, in light of the warrant's compliance with the Fourth Amendment, and suppression is not warranted on the basis of such technical violation because the defendant cannot establish prejudice or reckless disregard of proper procedures;

F.    The defendant had no reasonable expectation of privacy in his IP address; and,

G.    There is no fruit of the poison tree.

For these reasons, this Court should deny the defendant's motion.

### A.    Law enforcement relied in good faith upon the warrant.

"*Leon* made clear that the benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant' are 'marginal or nonexistent." *United States v. Esquivel-Rios*, 786 F.3d 1299, 1307 (10th Cir. 2015) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).  As such, this Court may choose to bypass the Rule 41 question and simply assess good faith.

"In *Leon*, the Supreme Court modified the Fourth amendment exclusionary rule by holding that evidence seized pursuant to a search warrant later found to be invalid need not be suppressed if the executing officers acted in objectively reasonable, good-faith reliance on the warrant." *United States v. Rowland*, 145 F.3d 1194, 1206 (10th Cir. 1998) *citing Leon* at 922.  The *Leon* Court reasoned that the exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges and magistrates" and noted that purpose is ill-served by excluding evidence "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," because in most of those cases "there is no police

illegality and thus nothing to deter." *Leon*, 468 U.S. at 916, 920, 921  *See also Rowland*, 145 F.3d at 1207 (refusing to exclude evidence and applying good-faith exception where search warrant not supported by probable cause); *United States v. Callwood*, 66 F.3d 1110, 1113 (10th Cir. 1995) (recognizing applicability of *Leon* good faith exception when officers reasonably relied on warrant issued by a detached and neutral magistrate, "even assuming arguendo that a constitutional violation occurred"); *United States v. Nolan*, 199 F.3d 1180 (10th Cir. 1999) (upholding search based upon the *Leon* good faith exception without deciding whether warrant was supported by probable cause).

Good faith is determined with reference to "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23.  However, "it must . . . be remembered that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985).   There is a presumption, which "must carry some weight," that "when an officer relies upon a warrant, the officer is acting in good faith." *Id.; Leon*, 468 U.S. at 922 ("[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.") (internal quotations omitted).

Suppression is a remedy of last resort, its sole purpose to deter future Fourth Amendment violations, and only when the deterrence benefits of suppression outweigh its heavy costs. *Davis v. United States*, 564 U.S. 229, 236-37 (2011); *Herring v. United States*, 555 U.S. 135, 140-41 (2009).  "The fact that a Fourth Amendment violation occurred--i.e., that a search or arrest was

unreasonable--does not necessarily mean that the exclusionary rule applies." *Herring*, 555 U.S. at 141 (*citing Illinois v. Gates*, 462 U.S. 213, 223 (1983)).  "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144.

Exclusion is a "harsh sanction" that "should not be applied[] to deter objectively reasonable law enforcement activity." *Davis*, 564 U.S. at 241 (2011) (quoting *Leon*, 468 U.S. at 919.)  Instead, the rule's proper function is limited to deterring "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."  *Herring*, 555 U.S. at 144.

 In *Herring*, the Supreme Court found that the exclusionary rule did not apply to a search incident to arrest of an individually unlawfully arrested based upon incorrect information of an outstanding arrest warrant.  The Court tethered this decision to several important principles:  1) "the exclusionary rule is not an individual right, and applies only where it results in appreciable deterrence," 555 U.S. at 140 – 41 (quotations and citation omitted); 2) "the benefits of deterrence must outweigh the costs," *Id*. (quotations and citation omitted); 3) "the extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct," *Id*. at 143 (quotations and citation omitted); 4) "the pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers," *Id*. at 145 (quotations and citation omitted); and 5) "when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not pay its way," *Id*. at 147 – 48 (quotations and citation omitted).

*Leon* identified four instances where an officer's reliance on a warrant would not be

objectively reasonable:  (1) if the judge issued the warrant on a deliberately or recklessly false affidavit, (2) where the judge abandoned his neutral and detached judicial role, (3) where the affidavit is so lacking in indicia of  probable cause that it would be unreasonable for the officer to rely on it, and (4) where the warrant is so facially deficient that an officer cannot reasonably believe it to be valid.  *Leon*, 468 U.S. at 923, 926.  The defendant did not claim that the issuing judge abandoned her neutral and detached judicial role.

### 1.    All Circuit Courts to consider whether the officers acted in good faith concluded suppression of the NIT warrant was improper.

The Tenth, First and Fourth Circuit Courts assumed, without deciding, that the NIT warrant violated the territorial limits of Rule 41(b) and that the violation could potentially justify a suppression remedy.  *Workman*, 863 F.3d 1313 (10th Cir. 2017); *McLamb*, 880 F.3d at 689 – 90; *Levin*, 874 F.3d at 321.  The Third and Eighth Circuit Courts held that the warrant violated Rule 41(b) and that the violation also contravened the Fourth Amendment.  *Werdene*, 883 F.3d 204 (3d Cir. 2018); *Horton*, 863 F.3d at 1049.  However, **all** Courts agreed that the good-faith exception applied, reasoning that "the deterrent effects on law enforcement do not outweigh the great cost to society of suppressing the resulting evidence."  *Levin*, 874 F.3d at 324; *Werdene*, 883 F.3d at 218 ("when the deterrent value of suppression is diminished, the deterrence rationale loses much of its force and exclusion cannot pay its way") (citation and quotations omitted); *McLamb*, 880 F.3d at 689 – 91; *Horton*, 863 F.3d at 1049 – 52.

In addition, dozens of lower courts, including two in the District of Kansas, have ruled that the *Leon* "good faith" exception applied to bar suppression of evidence derived from the NIT warrant, even if the issuance of the warrant did not comply with Rule 41, was "*void ab initio*" and/or resulted in a constitutional violation. *See*, e.g., *United States v. Palaniappan*, 2018 WL 1997973 (E.D.N.Y. Apr. 27, 2018); *United States v. Sasiadek*, 2018 WL 1805528 (W.D.N.Y. Apr.

17, 2018)(assuming NIT warrant unconstitutional, good faith exception applies); *United States v. Ferguson*, 2018 WL 1782928 (S.D. Tex. Apr. 13, 2018) (assuming issuance of NIT warrant violated Rule 41, good faith exception applies); *United States v. Spicer*, 2018 WL 635889 (S.D. Ohio Jan. 31, 2018)(adopting *United States v. Gaver*, 2017 WL 1134814 (S.D. Ohio Mar. 27, 2017)); *United States v. Hinds*, 2018 WL 624111 (W.D. Tenn. Jan. 30, 2018)(assuming NIT warrant was *void ab initio*, good faith exception applies); *United States v. Allen*, 2017 WL 6397728 (E.D.N.Y. Dec. 13, 2017)(assuming NIT warrant unconstitutional, good faith exception applies); *United States v. Cookson*, 2017 WL 5629678 (D. Kan. Nov. 22, 2017); *United States v. Wagner*, 17-CR-40097-DDC (D. Kan. July 18, 2018); *United States v. Kim*, 2017 WL 5256753 (E.D.N.Y. Nov. 10, 2017)(assuming NIT warrant was unconstitutional, good faith exception applies); *United States v. Uskovic*, 2017 WL 5198193 (E.D.N.Y. Nov. 10, 2017)(incorporating Kim); *United States v. Hinton*, No. 16-CR-97 (N.D. Ind. Nov. 7, 2017)(assuming NIT warrant was unconstitutional, good faith exception applies); *United States v. Grisanti*, 2017 WL 4650871 (S.D. Ind. Oct. 17, 2017); *United States v. Brooks*, 282 F. Supp. 3d 574 (W.D.N.Y. 2017); *United States v. Eqal*, 2017 WL 4150467 (E.D. Ky. Sept. 19, 2017)(good-faith exception applicable assuming without deciding warrant was void); *United States v. Barnes*, No. 15-cr-112 (M.D. Fla. Sept. 1, 2017)( assuming NIT warrant was not properly authorized under Rule 41 and such violation was constitutional, good faith exception applied); *United States v. Halgren*, 2017, WL 3741558 (W.D. Tex. Aug. 30, 2017); *United States v. Cruz-Fajardo*, 2017 WL 3634278 (N.D. Ga. Aug. 23, 2017); *United States v. Wheeler*, 2017 WL 3589564 (N.D. Ga. Aug. 21, 2017)(good-faith exception applicable assuming without deciding warrant was void); *United States v. Carlson*, No. 16-317 (D. Minn. Aug. 7, 2017) (applying 863 F.3d 1041 (8th Cir. 2017) to deny suppression and declining to follow magistrate's report and recommendation to suppress evidence); *United States v. Ramos*,

No. 16-cr-816 (W.D. Tex. Jul. 17, 2017)(wholly incorporating *Ganzer and Torres*); *United States v. Ganzer*, No. 16-cr-352 (W.D.Tex. Jul. 13, 2017); *United States v. Hernandez-Cuellar*, 2017 WL 2297171 (E.D. Tex. May 26, 2017); *United States v. Leal*, No. 17-cr-046 (S.D. Tex. May 26, 2017); *United States v. Dorosheff*, No. 16-cr-30049 (C.D. Ill. Apr. 27, 2017); *United States v. Scanlon*, No. 16-cr-073 (D. Vt. Apr. 26, 2017); *United States v. Taylor*, 250 F. Supp. 3d 1215 (N.D. Ala. 2017); *United States v. Lueck*, No. 17-cr-008 (M.D. Fla. Apr. 12, 2017); *United States v. Allen*, No. 15-cr-221 (D. Conn. Mar. 30, 2017); *United States v. Schuster*, No. 16-cr-51 (S.D. Ohio Mar. 28, 2017)(good-faith exception applicable assuming without deciding warrant was void); *United States v. Gaver*, 2017 WL 1134814 (S.D. Ohio Mar. 27, 2017); *United States v. Hachey*, 5:16-cr-128 (E.D. Pa. Mar. 9, 2017); *United States v. Pawlak*, 237 F. Supp. 3d 460 (N.D. Tex. 2017); *United States v. Perdue*, 237 F. Supp. 3d 471 (N.D. Tex. 2017)(consolidated with Pawlak); *United States v. Kahler*, 236 F. Supp. 3d 1009 (E.D. Mich. 2017); *United States v. Deichert*, 232 F. Supp. 3d 772 (E.D. N.C. 2017); *United States v. Sullivan*, F. Supp. 3d 732 (N.D. Ohio 2017); *United States v. Kneitel*, No. 16-cr-23-MSS-JSS (M.D. Fl. Jan. 3, 2017); *United States v. Tran*, 226 F. Supp. 3d 58 (D. Mass. 2016); *United States v. Dzwonczyk*, 2016 WL 7428390 (D. Neb. Dec. 23, 2016); *United States v. Vortman*, 2016 WL 7324987 (N.D. Cal. Dec.16, 2016); *United States v. Hammond*, 263 F. Supp. 3d 826 (N.D. Cal. 2016); *United States v. Duncan*, 2016 WL 7131475 (D. Or. Dec. 6, 2016); *United States v. Owens*, 2016 WL 7053195 (E.D. Wisc. Dec. 5, 2016); *United States v. Tippens*, et. al., No. 16-CR-5110 (W.D. Wa. Nov. 30, 2016); *United States v. Stepus*, 2016 WL 6518427 (D. Mass. Oct. 28, 2016); *United States v. Libbey-Tipton*, No. 16-cr-236 (N.D. Ohio Oct. 19, 2016); *United States v. Scarbrough*, 2016 WL 5900152 (E.D. Tenn. Oct. 11, 2016) (adopting Mag. Rep. and Rec.); *United States v. Allain*, 2016 WL 5660452 (D. Mass. Sept. 29, 2016); *United States v. Anzalone*, 2016 WL 5339723(D. Mass. Sept. 22, 2016);

*United States v. Broy*, 2016 WL 5172853 (C.D. Il. Sept. 21, 2016); *United States v. Ammons*, 2016 WL 4926438 (W.D. Ky. Sept. 14, 2016); *United States v. Knowles*, 2016 WL 6952109 (D. S.C. Sept. 14, 2016); *United States v. Torres*, 2016 WL 4821223 (W.D. Tex. Sep. 9, 2016); *United States v. Henderson*, 2016 WL 4549108 (N.D. Cal. Sept. 1, 2016); *United States v. Adams*, 2016 WL 4212079 (M.D. Fl. Aug. 10, 2016); *United States v. Acevedo-Lemus*, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016); *United States v. Rivera*, No. 2:15-cr-266-CJB-KWR (E.D. La. Jul. 20, 2016); *United States v. Werdene*, 2016 WL 3002376 (E.D. Pa. May 18, 2016); *United States v. Epich*, 2016 WL 953269 (E.D. Wis. Mar. 14, 2016)(unnecessary to reach the issue of Rule 41 compliance, suppression unwarranted); *United States v. Stamper*, 2016 WL 695660 (S.D. Ohio Feb. 19, 2016); *United States v. Michaud,* 2016 WL 337263 (W.D. Wash. Jan. 28, 2016).

Notably, of the lower courts that granted suppression, when appealed those cases were reversed. *See United States v. Carlson*, 2017 WL 1535995 (D. Minn. Mar. 23, 2017) (magistrate's report and recommendation), overruled by *United States v. Carlson*, No. 16-317 (D. Minn. Aug. 7, 2017) (applying *United States v. Horton* 863 F.3d 1041 (8th Cir. Jul. 24, 2017); *United States v. Croghan* (and *Horton*) (consolidated order), Nos. 15-cr-48;15-cr-51, 2016 WL 4992105 (S.D. Iowa Sept. 19, 2016), reversed by *United States v. Horton*, 863 F.3d 1041 (8th Cir. Jul. 24, 2017) (finding magistrate lacked jurisdiction to issue NIT warrant which resulted in constitutional violation, but suppression inappropriate under *Leon* "good faith" exception); *United States v. Workman*, 2016 WL 5791209 (D. Co. Sept. 6, 2016), reversed by *United States v. Workman*, 863 F.3d 1313, 2017 WL 3092174 (10th Cir. Jul. 21, 2017) (assuming for purposes of argument that magistrate lacked jurisdiction to issue NIT warrant which resulted in constitutional violation, suppression inappropriate under *Leon* "good faith" exception); *United States v. Arterbury*, No. 15-CR-182-JHP (N.D. Okla. May 17, 2016), holding overruled by *Workman*, 863 F.3d 1313; *United*

*States v. Levin*, 2016 WL 2596010 (D. Mass. May 5, 2016), reversed by *United States v. Levin*, 874 F.3d 316, (1st Cir. 2017) (assuming authorization of NIT warrant resulted in constitutional violation, suppression inappropriate under *Leon* "good faith" exception). Thus, this Court is strongly cautioned against agreeing with the defendant's arguments.

### 2. Law enforcement acted with objectively reasonable belief in the validity of the NIT warrant.

"Faced with the novel question of whether an NIT warrant" was authorized under the prior version of Rule 41(b) – a question on which "there was no precedent . . . the government turned to the courts for guidance." *Levin*, 874 F.3d at 323. "The government presented the magistrate judge with a request for a warrant, containing a detailed affidavit from an experienced officer, describing in detail its investigation, including how the NIT works, which places were to be searched, and which information was to be seized." *Id.* The magistrate judge then exercised independent judgment in determining to issue the warrant.

The *Workman* Court's analysis of the NIT warrant reinforces the conclusion that law enforcement's reliance on the warrant was objectively reasonable:

> For purposes of our discussion, we assume (without deciding) that the extraction of data from a user's computer in another district would violate the Federal Magistrates Act and the Federal Rules of Criminal Procedure. But if a violation took place, it has escaped the notice of eight federal judges who have held that the same warrant complied with federal law and the federal rules even though data was being extracted from computers outside the Eastern District of Virginia.[5] *See United States v. Falso*, 544 F.3d 110, 128-29 (2d Cir. 2008) (stating that a split among panel members shows that reasonable minds could differ, indicating satisfaction of the *Leon* exception).

> These eight federal judges would have been mistaken if the warrant here were invalid. But executing agents could reasonably have made the same mistake and reasonably relied on the magistrate judge's decision to issue the warrant. *See United States v. Gonzales*, 399 F.3d 1225, 1228-29 (10th Cir. 2005) ("[O]fficers are generally not required to second-guess the magistrate's decision in granting a warrant.").[6] Thus, the district court erred in granting the motion to suppress.

*Workman*, 863 F.3d at 1321[2].  That some courts have upheld the NIT warrant confirms that law enforcement's reliance on it was objectively reasonable.

**B.**  **The NIT Warrant was supported by probable cause, particularly described the place to be searched and the items to be seized, provided sufficient nexus to the place to be searched, and was issued by a neutral and detached magistrate.**

In addition to establishing probable cause to believe a crime has been committed, the search warrant affidavit must show "that there is a fair probability that evidence of that crime will be found" at a particular location.  *United States v. Reyes*, 798 F.2d 380, 382 (10th Cir. 1986).  "In issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept..." *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999).  *See also Gates*, 462 U.S. at 240; *United States v. Lawson*, 999 F.2d 985, 987 (6th Cir.1993) (stating that the magistrate is "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense") (quotations omitted)).  "The affidavit does not have to be a model of specificity."  *United States v. Chambers*, 882 F.3d 1305, 1311 (10th Cir. 2018), *citing United States v. Henderson*, 595 F.3d 1198, 1202 (10th Cir. 2010) ("An affidavit has enough factual support to justify reliance if it establishes a minimally sufficient nexus between the illegal activity and the place to be searched") (quotations omitted).

---

[2] *Workman* internal footnote 5:  *See United States v. Jones*, 230 F.Supp.3d 819, 824–25, 2017 WL 511883, at *4 (S.D. Ohio Feb. 2, 2017) (holding that issuance of the same warrant was authorized by Rule 41(b)(4)); *United States v. Austin*, 230 F.Supp.3d 828, 832–33, 2017 WL 496374, at *4 (M.D. Tenn. Feb. 2, 2017) (same); *United States v. Sullivan*, 229 F.Supp.3d 647, 655–56, 2017 WL 201332, at *6 (N.D. Ohio Jan. 18, 2017) (same); *United States v. Bee*, No. 16-00002-01-CR-W-GAF, 2017 WL 424905, at *4 (W.D. Mo. Jan. 13, 2017) (unpublished) (report and recommendation by magistrate judge, concluding that issuance of the same warrant was authorized by Rule 41(b)(4)), adopted 2017 WL 424889 (W.D. Mo. Jan. 31, 2017) (unpublished); *United States v. Lough*, 221 F.Supp.3d 770, 777 (N.D. W. Va. 2016) (holding that issuance of the same warrant was authorized by Rule 41(b)(4)); *United States v. Smith*, No. 15-CR-00467, slip op. at 14-15 (S.D. Tex. Sept. 28, 2016) (unpublished) (same); *United States v. Jean*, 207 F.Supp.3d 920, 942-43 (W.D. Ark. 2016) (same).

The defendant does not challenge that the issuing magistrate was neutral and detached. Therefore, the government will focus on the remaining challenges to probable cause, particularity, and nexus.

### 1.    The NIT Warrant was supported by probable cause.

Over a dozen courts have found the NIT warrant was amply supported by probable cause. *See,* e.g., *United States v. Darby*, 190 F.Supp.3d 520 (E.D.Va. June 3, 2016); *United States v. Matish*, 193 F. Supp. 3d 585 (E.D. Va. 2016); *Allain*, 213 F.Supp.3d 236 (D. Mass. Sept. 29, 2016); *United States v. Michaud*, 2016 WL 337263, *3 n.1 (W.D. Wash. Jan. 28, 2016); *United States v. Epich*, 2016 WL 953269, *1–2 (E.D. Wis. Mar. 14, 2016); *United States v. Eure*, 2016 WL 4059663 (E.D. Va. Jul. 28, 2016) (incorporating *Darby*, authored by same judge); *United States v. Henderson*, 2016 WL 4549108, *4 (N.D. Cal. Sep. 1, 2016); ); *United States v. Torres*, 2016 WL 4821223, *7 (W.D. Tx. Sep. 9, 2016);  *United States v. Jean*, 2016 WL 4771096, *10 (W.D. Ark. Sep. 13, 2016); *United States v. Ammons*, 2016 WL 4926438, *9 (W.D. Ky. Sept. 14, 2016); *United States v. Broy*, 2016 WL 5172853, *9 (C.D. Il. Sept. 21, 2016); *United States v. Anzalone*, 2016 WL 5339723, *6–7 (D. Mass. Sept. 22, 2016); *United States v. Scarbrough*, 2016 WL 5900152, at 12–13 (E.D. Tenn. Oct. 11, 2016). The warrant allowed the government to place the NIT on the computers of users who registered an account and logged on to the Playpen website.  The defendant argues that the warrant did not sufficiently account for innocent or inadvertent use.  However, considering all reasonable inferences, the magistrate judge was justified to conclude that evidence of a crime would be located on the activating computers.

Upon successful access to Playpen's main page, the user would see, at a minimum, an image of a single female.   The female was provocatively dressed and posed, and appears to be under the age of 18.   The image would does not meet the definition of child pornography.

Nevertheless, the image was "child erotica," and conveyed a clear idea of the type of material the user would find within the site.

A user had to register to advance past the main page.  The user was informed that the site administrators would be unable to identify registered users, encouraging those with this promise of anonymity.

Further, the affidavit in support of the NIT warrant described Playpen as a global online forum through which registered users distributed and accessed child pornography.  The affidavit described the website's contents, including forums organized according to sexual interest, gender, and age.  The vast majority of those forums pertained to child pornography.  The affidavit described in detail materials of child pornography available to all registered users.

The affidavit included a three-page explanation of the offenses under investigation, a seven-page section of definitions of technical terms; and a three-page explanation of the Tor network, how it worked, and the steps users had to take to find the Playpen website.

The affidavit contained sufficient evidence for the magistrate judge to find probable cause to authorize the NIT warrant.

> ### 2.      The NIT warrant particularly described the place to be searched and the items to be seized.

The defendant argues that the NIT warrant failed to particularly describe the places to be searched, was overbroad, and granted impermissible discretion to law enforcement.  Yet, over a dozen courts have found that the NIT warrant particularly described the place to be searched and the things to be seized, and the government is not aware that any court has found particularity lacking. *See, e.g., Darby*, 190 F.Supp.3d 520 (E.D.Va. June 3, 2016); *Allain*, 213 F.Supp.3d 236 (D. Mass. Sept. 29, 2016); *Matish,* 193 F. Supp. 3d 585 (E.D. Va. 2016); *Michaud*, 2016 WL 337263, *5 (W.D. Wash. Jan. 28, 2016); *United States v. Stamper*, 2016 WL 695660, *19 (S.D.

Ohio Feb. 19, 2016) *United States v. Epich*, 2016 WL 953269, *2 (E.D. Wis. Mar. 14, 2016); *United States v. Acevedo-Lemus*, 2016 WL 4208436, *7 n.4 (C.D. Cal. Aug. 8, 2016); *United States v. Henderson*, 2016 WL 4549108, *4 (N.D. Cal. Sep. 1, 2016); *United States v. Jean*, 2016 WL 4771096, *11–12 (W.D. Ark. Sep. 13, 2016); *United States v. Broy*, 2016 WL 5172853, *3 (C.D. Il. Sept. 21, 2016); *United States v. Anzalone*, 2016 WL 5339723, *7 (D. Mass. Sept. 22, 2016); *United States v. Scarbrough*, 2016 WL 5900152, at 14 (E.D. Tenn. Oct. 11, 2016); s*ee also United States v. Laurita*, 2016 WL 4179365, *6–7 (D. Neb. Aug. 5, 2016) (finding similar 2012 NIT warrant particularly described the place to be searched and things to be seized).

The Fourth Amendment requires not only that a search warrant be supported by probable cause, but also that it particularly describe "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). To satisfy the particularity requirement in the Tenth Circuit, a warrant "must describe the place to be searched with sufficient particularity so that the executing officer can locate and identify it with reasonable effort. The requisite specificity of the description differs for rural and urban areas and depends heavily on the facts of each case." *United States v. Williamson*, 1 F.3d 1134, 1135-36 (10th Cir. 1993), *quoting United States v. Dorrough*, 927 F.2d 498, 500 (10th Cir. 1991).

The "manifest purpose" of the particularity requirement is "to prevent general searches." *Garrison*, 480 U.S. at 84. "By limiting the authorization to search to the specific areas and things for which there is probable cause to search . . . ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the

Framers intended to prohibit." *Id.* Moreover, the requirement "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick*, 433 U.S. 1, 9 (1977) (citations omitted). *See also Illinois v. Gates*, 462 U.S. at 236 ("[P]ossession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct."). The particularity requirement does not demand "elaborate specificity" or "technical perfection," but rather is applied "with a practical margin of flexibility. *United States v. Bradley*, 644 F.3d 1213, 1259 (11th Cir. 2011) (citations omitted).

In the instant case, the NIT warrant stated that the search would be "OF COMPUTERS THAT ACCESS [the Playpen Website address]." (NIT Search and Seizure Warrant.) The NIT would be "deployed" on the Playpen server, located at a government controlled facility in the Eastern District of Virginia. The NIT Warrant described the place to be searched as the "activating computers . . . of any user or administrator who logs into the [Playpen] WEBSITE by entering a username and password." The NIT Warrant described the information to be seized "[f]rom any 'activating' computer" as seven discrete pieces of information. (NIT Warrant Attachments A and B). Those descriptions "clearly limited which computers could be searched and what information could be obtained as a result of that search." *United States v. Allain*, 213 F.Supp.3d 236, 248 (D.Mass 2016). To retrieve the child-pornography evidence on the activating computer, the FBI had to get a separate warrant, as occured in this case.

For every "activating computer," the affidavit provided probable cause that computer contained evidence of child-pornography offenses, because every Playpen user had to: download Tor software, acquire the string of characters comprising the Playpen website address, view the Playpen front page (that depicted either two prepubescent females in sexually suggestive poses or

a single minor female in age inappropriate attire), along with the directions on uploading and downloading files, create an account using a fake e-mail account, then arrive at the Playpen main directory with forum topics referencing child exploitation. The NIT warrant's scope did not create a risk of computer searches usupported by probable cause. If a computer did not log into Playpen, then it would fall outside the scope of the warrant, and the NIT would not deploy.

The NIT warrant was constitutionally sufficient because it "limited which computers could be searched and what information could be obtained as a result of that search." *Allain*, 213 F.Supp.3d at 248. In the instant case, the NIT was only deployed because someone using the defendant's computer located the Playpen Website, observed the homepage – which was at a minimum suggestive of the content and assured anonymity – then logged onto the website using a registered account.

> **3.    The NIT warrant satisfied the nexus requirement that evidence of a crime would be found on the activating computers.**

In order to find probable cause to issue a warrant, the magistrate judge must find a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched." *United States v. Potts*, 559 F. Supp. 2d 1162, 1171 (D. Kan. 2008) aff'd, 586 F.3d 823 (10th Cir. 2009). "Probable cause to search a location does not depend on direct evidence or personal knowledge that evidence or contraband is located there." *United States v. Harvey*, 514 F. Supp. 2d 1257, 1261 (D. Kan. 2007) (citing *United States v. Hargus,* 128 F.3d 1358, 1362 (10th Cir.1997)). "A nexus between the objects to be seized and the place to be searched for them is established when the circumstances set out in the affidavit would warrant a person of reasonable caution to believe that the articles sought would be found at the place to be searched." *Hargus*, 128 F.3d at 1362; *and see United States v. Deppish*, 994 F. Supp. 2d 1211, 1218 (D. Kan. 2014) ("[t]he affidavit need not aver that criminal activity actually occurred in [the location to be

searched] as long as a person of reasonable caution would believe that the articles sought would be found [in the place to be searched]").

The NIT warrant clearly established a nexus in the instant case between the items seized – the seven discrete pieces of information from the defendant's computer, and the suspected criminal behavior – crimes related to child pornography.  As noted above, Playpen was a forum dedicated to the exploitation of children.  The NIT warrant *only* deployed when a registered user logged onto the Playpen website with a registered username and password.

      **C.**    **There were no material omissions in the affidavit; any misstatements were not made knowingly or intentionally, or with reckless disregard for the truth; and in any event the misstatements were not necessary to the magistrate's finding of probable cause.**

The defendant argues that the affidavit in support of the NIT contained "several critical allegations" that were false or misleading.  Specifically, the defendant complains that the affidavit understated the likelihood of an innocent or inadvertent visit, and inaccurately described the website's homepage.  Over a dozen courts have denied requests for *Franks* hearings based upon similar challenges. *See*, e.g., *United States v. Tran*, 226 F. Supp. 3d 58, 64 (D. Mass. 2016); *United States v. McLamb*, 220 F. Supp. 3d 663, 672 (ED Va 2016); *United States v. Allain*, 213 F.Supp.3d 236, 248 (D.Mass 2016); *United States v. Matish*, 193 F. Supp. 3d 585 (E.D. Va. 2016); *Darby*, 190 F.Supp.3d 520 (E.D.Va. June 3, 2016); *United States v. Spicer*, 2018 WL 635889 (S.D. Ohio Jan. 31, 2018)(adopting *United States v. Gaver*, 2017 WL 1134814 (S.D. Ohio Mar. 27, 2017)); *United States v. Allen*, No. 15-cr-620, 2017 WL 6397728 (E.D.N.Y. Dec. 13, 2017); *United States v. Uskovic*, 2017 WL 5198193 (E.D.N.Y. Nov. 10, 2017); *United States v. Kim*, No. 16-cr-191, 2017 WL 5256753 (E.D.N.Y. Nov. 10, 2017); *United States v. Leonard*, 2017 WL 4478330 (E.D. Va. Oct. 6, 2017); *United States v. Gaver*, 2017 WL 1134814 (S.D. Ohio Mar. 27, 2017); *United States v. Kahler*, 2017 WL 586707, (E.D. Mich. Feb. 14, 2017); *United States v. Deichert*, 2017

WL 398370 (E.D. N.C. Jan. 28, 2017); *United States v. Owens*, 2016 WL 7079609 (E.D. Wis.

Dec. 5, 2016); *United States v. Anzalone*, 2016 WL 5339723 (D. Mass. Sept. 22, 2016); *United

States v. Eure*, 2016 WL 4059663 (E.D. Va. Jul. 28, 2016); *United States v. Michaud*, 2016 WL

337263 (W.D. Wash. Jan. 28, 2016).

There is a "presumption of validity with respect to the affidavit supporting the search

warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

> A court is required to hold a Franks hearing only when "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause . . . ."

*Allain*, 213 F.Supp.3d at 246, *citing Franks*, 438 U.S. at 155–56.

To succeed with a *Franks* challenge, the defendant must meet show both a knowing and

intentional false statement or reckless disregard for the truth, *and* that the statement was necessary

to the probable cause determination.  The defendant in the instant case cannot meet either prong.

No court has found that the inaccurate description of the homepage was made knowingly

or with reckless disregard for the truth, or that it was material to finding probable cause to issue

the warrant.  The veteran FBI agent who submitted the affidavit last accessed the Playpen website

on February 18, 2015.  One day later, the magistrate authorized the NIT warrant.  In that short time

frame, the Playpen main page images were modified.  The affiant did not act with knowing or

reckless disregard for the truth of his affidavit.  "Allegations of negligence or innocent mistake"

are insufficient to warrant a *Franks* hearing.  *Allain*, 213 F.Supp.3d at 246, *citing Rivera*, 825 F.3d

at 66.

In addition, the magistrate's probable cause determination did not depend upon the

description of Playpen's main page.  The actual appearance of the main page at the time the

magistrate authorized the warrant still suggested that the content involved child exploitation

materials.

The defendant also claims that the warrant was misleading because it stated that the property to be searched was located in the Eastern District of Virginia. However, the warrant also incorporated Attachment A, which stated that the server operating the website in question is "located at a government facility in the Eastern District of Virginia."

Attachment "A," also stated that after the NIT was deployed, it would obtain information from the activating computers. Attachment A then defined the activating computers as "those of any user or administrator who logs into the TARGET WEBSITE by entering a username and password." In addition, the affidavit described how the NIT would cause the activating computer, "wherever located," to transmit certain information to a government computer to help identify the location of the activating computer and its user. These statements clearly alerted the magistrate that data would be gathered from computers potentially located outside of the Eastern District of Virginia.

The NIT warrant authorized a search of the defendant's computer once he used it to log into the Playpen website. *See United States v. Brooks*, 2017 WL 3835884, at *12 (W.D.N.Y. Aug. 31, 2017) ("the warrant specifically identified the places to be searched as the computers of anyone who logged onto Playpen")(*citing United States v. Gaver*, 2017 WL 1134814 at *13 ("Attachment A makes it clear that, although the computer server was located in Virginia, the NIT would operate to obtain information from the activating computers[;] ... [i]mplicit in this statement is the concept that these 'activating computers' may be located outside of the district") (collecting cases); *United States v. Pawlak*, 237 F. Supp. 3d 460, 465-66 (N.D. Tex. 2017) ("[t]he NIT [w]arrant therefore authorizes the search and seizure of the server operating the Tor Network child pornography website, which is located at a government facility in the Eastern District of Virginia, and the

activating computers, wherever located[;] it is not limited in scope to one FBI computer server located in the Eastern District of Virginia"); *United States v. Tran*, 226 F. Supp. 3d 58, 64 (D. Mass. 2016) ("[a] complete, contextual reading of the warrant demonstrates, as other district courts have found, that the warrant was not geographically limited to activating computers in the Eastern District of Virginia")).

Further, none of the other challenges raised by the defendant – that Playpen could be accessed and its true IP address discerned through the regular internet, that the main page failed to convey the message that the content was illegal – do not impact the probable cause finding. "[A]lthough it is possible that someone could innocently stumble across the PlayPen website, [i]t is improbable that anyone would go to the trouble of registering for the site in order to look for [legal content] likely available elsewhere on the Internet." *United States v. Gaver*, 2017 WL 1134814 at *5, *citing United States v. McLamb*, 220 F. Supp. 3d 663, 672 (ED Va 2016).

The Playpen website was accessible only through the Tor network, its name was suggestive of child exploitation, the photo of the young girl on the homepage was suggestive of the content, the website warned users to remain anonymous when registering, and upon registration the user had access to child exploitation material. These facts supported the magistrate's probable cause finding.

### D. The NIT warrant did not violate the reasonableness clause.

The defendant complains that, by continuing to operate the Playpen website for a period of 13 days while trying to identify users and administrators who would otherwise remain anonymous, law enforcement violated the Fourth Amendment's Reasonableness Clause. The FBI's investigation into Playpen users was simply not the type that implicates this Clause.

"The general touchstone of reasonableness which governs Fourth Amendment analysis . .

. governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (citation omitted); U.S. Const. amend. IV.

"[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness." *United States v. Ganias*, 824 F.3d 199, 209–10 (2nd Cir. 2016), *citing United States v. Leon*, 468 U.S. 897, 922 (1984) (alteration omitted); *and see L.A. Cty. v. Rettele*, 550 U.S. 609, 614–16 (2007) (applying the reasonableness standard to evaluate whether police officers' manner of executing a valid warrant violated the Fourth Amendment). In *Ganias*, the Second circuit declined to rule on the question whether the government violated the Fourth Amendment by retaining forensic copies of the defendant's electronic devices. *Ganias*, 824 F.3d at 220. Instead, the Court found that law enforcement relied in good faith on the original search warrant. *Id*. at 224.

The Fourth Amendment prohibits "unreasonable searches and seizures," *see Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), and in order to determine whether a search was reasonable, this Court should look at "the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). Generally, a search that satisfies the Warrant Clause of the Fourth Amendment will also satisfy the Reasonableness Clause. *See Richards v. Wisconsin*, 520 U.S. 385, 395 (1997) (even with a warrant, "the reasonableness of the officers' decision ... must be evaluated as of the time [of the search]"). "[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject of course to the general Fourth Amendment protection against unreasonable searches and seizures." *Dalia v. United States*, 441 U.S. 238, 257 (1979) (quotations omitted).

In the instant case, law enforcement's actions in the execution of the search and seizure

were constitutionally reasonable, and the defendant does not challenge that such actions exceeded those authorized by the magistrate. The affidavit in support of the NIT warrant explained in detail what the NIT was and what it would do. The affidavit clarified that "the FBI has assumed administrative control of the [Playpen] WEBSITE" and that "[t]he [Playpen] WEBSITE will continue to operate from the government-controlled computer server . . . for a limited period of time, not to exceed 30 days, in order to locate and identify the administrators and users" of the Playpen website "through deployment of the network investigative technique [NIT]" further described. The affidavit explained that users and administrators of the Playpen website would remain anonymous without the use of "additional investigative techniques."

### E. The issuance of the NIT warrant complied with Rule 41, which is to be interpreted flexibly, at a minimum, as a tracking device pursuant to Rule 41(b)(4), and therefore the warrant was not void.

The defendant argues that, under Rule 41(b) and 28 U.S.C. § 636(a), the magistrate judge did not have authority to issue the NIT warrant. However, Rule 41(b)(4) authorized the magistrate judge to issue a warrant to install the NIT on the Playpen server located within the district, and that warrant properly authorized the use of the NIT to track the movement of information – digital child pornography requested by users who logged into the Playpen website – as it traveled from the server in the Eastern District of Virginia through the encrypted Tor network to the users' activating computers, wherever located. The activating computer then transmitted specific information back to the government computer, thereby enabling the government to identify the user's true IP address. To date, over a dozen courts have ruled that the NIT warrant was properly authorized as a tracking device pursuant to Rule 41(b)(4). *See*, e.g., *United States v. McLamb*, 220 F. Supp. 3d 663, 672 (ED Va 2016); *United States v. Matish*, 193 F. Supp. 3d 585 (E.D. Va. 2016); *United Darby*, 190 F.Supp.3d 520 (E.D.Va. June 3, 2016); *United States v. Leonard*, 2017 WL

4478330 (E.D. Va. Oct. 6, 2017); *United States v. Austin*, 2017 WL 496374 (M.D. Tenn. Feb. 2, 2017); *United States v. Jones*, 2017 WL 511883 (S.D. Ohio Feb. 2, 2017); *United States v. Bee*, 2017 WL 424889 (W.D. Mo. Jan. 31, 2017)(adopting magistrate's report and recommendation at 2017 WL 424905); *United States v. Sullivan*, 2017 WL 201332 (N.D. Ohio Jan. 18, 2017); *United States v. Lough*, 2016 WL 6834003 (N.D. W.Va. Nov. 18, 2016); *United States v. Kienast*, 2016 WL 6683481 (E.D. Wisc. Nov. 14, 2016); *United States v. Johnson*, 2016 WL 6136586 (W.D. Mo. Oct. 20, 2016); *United States v. Jean*, 2016 WL 4771096 (W.D. Ark. Sep. 13, 2016); *United States v. Eure*, 2016 WL 4059663 (E.D. Va. Jul. 28, 2016) (incorporating *Darby*, authored by same judge); s*ee also United States v. Laurita*, No. 8:13CR107, 2016 WL 4179365 (D. Neb. Aug. 5, 2016) (finding similar 2012 NIT warrant deployed on Tor network child pornography website properly authorized under tracking device provision of Rule 41(b)(4)).

Rule 41(b)(4) provides that a warrant for a tracking device "may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both," provided that the tracking device is installed within the district. The Rule defines "property" to include not only "tangible objects" but also "information." Fed. R. Crim. P. 41(a)(2)(A). A "tracking device" is defined as "an electronic or mechanical device which permits the tracking of the movement of a person or object." Rule 41(a)(2)(C); 18 U.S.C. § 3117(b). Although the term "device" is not more specifically defined in the Rule, it is a word commonly used to describe "[a] thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment." Oxford Dictionary, https://en.oxfordictionaries.com/definition/device.

The NIT operated as a digital tracking device of intangible information within the meaning of Rule 41(b)(4). *See United States v. Leonard*, 2017 WL 4478330, at *3 (E.D. Va. Oct. 6, 2017) (the magistrate judge had authority to authorize the NIT search warrant even though the tracking

capabilities could ultimately impact out-of-district computers) *citing McLamb*, 220 F. Supp. 3d at 673 (finding the NIT analogous to a tracking device which, as long as it is installed within the district, it may permissibly operate after the device leaves the district where it was installed); *Matish*, 193 F. Supp. 3d 585, 613 (E.D. Va. 2016) ("[W]hen users entered Playpen, they came into Virginia in an electronic manner ... When that computer left Virginia—when the user logged out of Playpen—the NIT worked to determine its location, just as traditional tracking devices inform law enforcement of a target's location").

The Supreme Court has since revised Rule 41 to now explicitly authorize a tracking device such as the NIT. *See* Rule 41(b)(6). As noted by at least two courts, the amendment sought to clarify Rule 41, not expand its scope. *United States v. Darby*, 190 F.Supp.3d 520, 536 (E.D.Va. June 3, 2016); *United States v. Smith*, 2016 U.S. Dist. LEXIS 182365, at *10 (S.D. Tex. Sept. 28, 2016).

      **F.**     **Assuming that the NIT warrant did not strictly comply with Rule 41, suppression is not warranted because the violation was non-constitutional and because the defendant had no reasonable expectation of privacy in his IP address.**

In *Workman*, the Tenth Circuit assumed, without deciding, that the warrant lacked any legal effect because the magistrate judge had exceed her authority. 863 F.3d at 1319. The Court rejected the defendant's "*void ab initio*" argument, instead noting that *Leon* applied to a search based on a warrant where the magistrate judge exceeded her authorization. *Workman*, 863 F.3d at 1319[3]; a*nd see United States v. Hinds*, 2018 WL 624111 (W.D. Tenn. Jan. 30, 2018) (assuming NIT warrant was *void ab initio*, good faith exception applies)

---

[3] The government acknowledges *United States v. Barber*, 184 F.Supp.3d 1013, 1019 (D.Kan. 2016), where the district court determined that a warrant "was void at its inception," and the good faith exception did not apply. *Barber* should now be distinguished in light of *Workman*. In addition, the *Barber* court did not address the fact that the defendant had no reasonable expectation of privacy in his IP address.

Technical violations of Rule 41 do not always rise to the level of a constitutional violation, so would not result in suppression of evidence, unless the defendant can also show "prejudice in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed" or "evidence of intentional and deliberate disregard of a provision in the rule." *United States v. Krueger*, 809 F.3d 1109, 1114 (10th Cir. 2015); *United States v. Allen*, 2018 WL 1726349 (D.Kan. April 10, 2015), *quoting United States v. Rome*, 809 F.2d 665, 669 (10th Cir. 1987) (citations omitted).

Other courts have also rejected the idea that infirmities in the NIT warrant require suppression.  In *United States v. Sasiadek*, 2017 WL 5019257, *4 (W.D.NY 2017) the district court noted:

> the Courts of Appeals have started to weigh in on the issues arising from the NIT. While the appellate courts in question do not yet include the Second Circuit, their analysis is persuasive and simplifies the challenge before this Court. These recent appellate opinions are particularly important because, with one critical exception at the end, they would eliminate the need for hearings and find for Sasiadek on every major substantive point. In *United States v. Horton*, 863 F.3d 1041 (8th Cir. 2017), the NIT helped FBI agents identify the defendant as a Playpen visitor under circumstances essentially identical to this case. The Eighth Circuit made a string of specific findings in favor of the defense. The Eighth Circuit found that "the execution of the NIT in this case required a warrant." *Id.* at 1047 (citation omitted). Next, the Eighth Circuit noted that Rule 41 does not allow "a magistrate judge in one jurisdiction to authorize the search of a computer in a different jurisdiction." *Id.*[4] The Eighth Circuit concluded "that the NIT warrant exceeded the magistrate judge's jurisdiction." *Id.* at 1048. The Eighth Circuit even went as far as to state that "[w]e agree with the district court and find that the NIT warrant was void *ab initio*, rising to the level of a constitutional infirmity." *Id.* at 1049. Nonetheless, the Eighth Circuit found that suppression was not appropriate under *United States v. Leon*, 468 U.S. 897 (1984).

*See also, United States v. Wheeler*, 2017 WL 3589564, at *3 (N.D. Ga. Aug. 21, 2017) ("Our review of relevant Supreme Court precedent leads us to a similar conclusion [as the Sixth Circuit in *United States v. Master*, 614 F.3d 236, 241 (6th Cir. 2010) ]: that the *Leon* exception can apply to warrants *void ab initio* like this one).

One of the categories of data the NIT was designed to reveal was the "activating computer's

actual IP address."   Even if the IP address was disguised using Tor, the defendant still had to convey his IP address to a third party to access the Tor network.   "The fact that the Government needed to deploy the NIT to a computer does not change the fact that Defendant has no reasonable expectation of privacy in his IP address." *United States v. Matish*, 193 F. Supp. 3d 585, 616 (E.D. Va. 2016) (citing cases); *United States v. Halgren*, 2017 WL 3741558, at *3 (W.D. Tex. Aug. 30, 2017) ("[g]iven that the Defendant's IP address was required to be disclosed to various third parties and Playpen to access the website, any subjective expectation of privacy the Defendant may have possessed was not objectively reasonable") *citing  United States v. Weast*, 811 F.3d 743, 747 (5th Cir. 2016); *and see United States v. Ryan Anthony Adams*, 2016 WL 4212079, at *4 (M.D. Fla. Aug. 10, 2016) ("Defendant does not have a reasonable expectation of privacy in the IP address associated with the computer he used to access Playpen").

There is no basis to suppress the defendant's IP address that was identified using the NIT. Thus, the information that led to the identification of the defendant as "thedirtbed," is not subject to the Fourth Amendment.

### G.      There is no fruit of the poisonous tree.

The defendant argues that all evidence seized from his residence is fruit of the poisonous tree and should be suppressed.   However, "the decision to exclude evidence is divorced from whether a Fourth Amendment violation occurred." *United States v. Master*, 614 F.3d 236, 242 (6th Cir. 2010) (citing *Herring v. United States*, 555 U.S. 135, 141 (2009)).   At a minimum, this Court should find that the officers who searched the defendant's residence relied in good faith upon the facially valid search warrant.   Thus, suppression is not warranted.


### CONCLUSION

Based on the above, the Court should overrule and deny the defendant's motion.

Respectfully submitted,

STEPHEN R. MCALLISTER
United States Attorney

s/Jason W. Hart
JASON W. HART
Kan. S. Ct. No. 20276
Assistant U.S. Attorney
District of Kansas
301 N. Main, Ste. 1200
Wichita, Kansas 67202
Tel: 316-269-6481
Fax: 316-269-6484
Email: Jason.hart2@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on September 3, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to Trevor Riddle, attorney for defendant.

s/Jason W. Hart
JASON W. HART
Assistant United States Attorney